### 19286

Dr. J. Ernest LATHEM, et al., Respondents, v. The CITY OF GREENVILLE, South Carolina, Appellant

(183 S. E. (2d) 455)

*Messrs. Harvey G. Sanders, Jr., W. H. Arnold* and *William I. Bouton,* Greenville, *for Appellant,*

*Messrs. Vance B. Drawdy* and *Harry A. Chapman, Jr.,* Greenville, *for Respondents,*

September 8, 1971.

BRAILSFORD, Justice:

On May 28, 1968, the City Council of Greenville approved a general street improvement program which called for the paving of Sagamore Lane. The seven respondents, homeowners thereon, sought and obtained an injunction preventing the city from proceeding with the paving, part of the cost of which would have been assessed to them. They alleged, and the lower court found, that the governing ordinance, Section 33-71 of the Greenville City Code, had not been followed. That section permits the owners of two-thirds of the frontage abutting on certain public ways to petition the city for improvements. Such a petition must be filed with the city manager and specify the improvements desired and the proportion of the cost the petitioners agree to bear. The ordinance continues:

"The City Manager shall then have (it) determined whether (two-thirds) have signed, and, if so, he shall then have determined an estimate of the costs of the improvements. This information, with the petition, shall be presented by the City Manager to the Council at its next regular or special meeting. The Council shall then consider the petition and the accompanying information and take such action thereon as it may deem advisable."

The evidence, largely undisputed, discloses several points at which the procedure relied upon by the city to legitimate its undertaking diverged from that prescribed by the ordinance. Upon these irregularities the respondents base their claim of invalidity.

We think the following principle, widely adhered to in similar cases, governs here:

"Nonobservance of mere directory provisions, slight irregularities, immaterial variances, and minor departures from the letter of the requirement which are not fundamental to the initiation and progress of the improvement, or the levying, confirmation and validity of the assessment, and which are not injurious or prejudicial to the landowners who are called upon to pay, will be disregarded, where there is substantial compliance with requirements." 14 E. McQuillen, Law of Municipal Corporations, Sec. 38-175 (1970 rev. vol.), and cases there cited.

Respondents first charge noncompliance in the fact that the property owners' petition upon which the city relied was filed with the city engineer and not with the city manager, the official designated by the ordinance to receive it. The city manager's authority to delegate this duty to the city engineer is clear. Even so, respondents contend that such a delegation has not been made since no writing exists to evidence it. This was not required. The delegation of this function was amply attested by long-standing practice, approved by the city manager. [1]

In the same vein, respondents contend that the petition was never submitted by the city manager to the council. Instead, the proposal contained in the petition was embodied in a consolidated street improvement program, transmitted to and approved by the council in a single resolution. Clearly, this procedure substantially complied with the ordinance. See *Gallimore v. Town of Thomasville,* 191 N. C. 648, 132 S. E. 657 (1926).

---

[1] Respondents similarly contended below that since the determinations directed to be made by the city manager were made instead by the city engineer and his staff, the petition was not properly before the council. This ground was not seriously relied on by the lower court and has been substantially abandoned in the brief. It is totally without merit. *Parker-Washington Co. v. Cecil,* 208 Mo. App. 496, 502, 236 S. W. 1100, 1102-1103 (1922); *Schreifer v. City of Auburn,* 110 Neb. 179, 193 N. W. 350 (1923).

Finally, respondents claim invalidity since the petition was not acted upon until the council meeting at which the city's annual, unified street improvement plan was considered and passed. This meeting did not take place until two weeks after the "next regular or special meeting" contemplated by the ordinance. However, the expeditious consideration directed by the ordinance was intended, we think, to prevent the possibility of action based on a stale petition, one which might no longer reflect the wishes of the subscribing property owners. There is no suggestion in this case that anyone sought to withdraw his consent during the fortnight's delay, or that the apparent unanimity of the residents of Sagamore Lane had been lost by the time council acted. Not until eighteen months later did one of the signators seek to renege.[2] It is not argued that second thoughts at this late date could impair the validity of the petition's acceptance by council.

Reversed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.

---

[2] The lengthy delay in beginning the project is accounted for in the record. Respondents do not claim an abandonment by the city of its resolution.